## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No. 23-cv-2065-MMB |
| ESSA BANK & TRUST, | |
| *Defendant*. | |

**BRIEF OF *AMICI CURIAE* IN OPPOSITION TO UNOPPOSED MOTION
TO TERMINATE CONSENT ORDER AND DISMISS WITH PREJUDICE**

Eli Segal
John S. Stapleton
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
(215) 561-1500
esegal@stapletonsegal.com

Daniel Urevick-Ackelsberg
Olivia Mania
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1316
dackelsberg@pubintlaw.org

Attorneys for *Amici Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................ii

I.    INTEREST OF *AMICI CURIAE* ....................................................1

II.   INTRODUCTION ............................................................................1

III.  FACTUAL BACKGROUND ..........................................................2

  A.  The United States files a fair lending action against ESSA Bank & Trust .....2

  B.  This Court enters a Consent Order between the United States and ESSA Bank & Trust........................................................................6

  C.  The Trump Administration begins vacating, terminating, or dismissing civil rights consent orders with no legal justification............................................8

IV.   LEGAL STANDARD........................................................................9

V.    ARGUMENT ...................................................................................10

  A.  The United States is not entitled to relief under Rule 60(b)(5)....................11

    a.  The Consent Order has not been satisfied..................................11

    b.  There have been no significant changes in fact or law ..............................13

  B.  The United States is not entitled to relief under Rule 60(b)(6)....................15

VI.   CONCLUSION................................................................................18

**TABLE OF AUTHORITIES**

**Cases**

*Agostini v. Felton*,
     521 U.S. 203 (1997)......................................................................13

*Argentum Med., LLC v. Noble Biomaterials*,
     No. 3:08-CV-1305, 2014 WL 4351531 (M.D. Pa. Sept. 2, 2014).... 10, 17, 18

*Boughner v. Sec'y of Health, Educ. & Welfare*,
     572 F.2d 976 (3d Cir. 1978).........................................................2, 9

*Budget Blinds, Inc. v. White*,
     536 F.3d 244 (3d Cir. 2008)..................................................... 10, 15

*Clarendon Ltd. v. Nu-W. Indus., Inc.*,
     936 F.2d 127 (3d Cir. 1991).................................................... 16, 18

*Coltec Indus. v. Hobgood*,
     280 F.3d 262 (3d Cir. 2002).........................................................15

*Devore v. City of Philadelphia*,
     No. 00-3598, 2003 WL 21961975 (E.D. Pa. June 24, 2003) .......................18

*Gonzalez v. Crosby*,
     545 U.S. 524 (2005)......................................................................9

*In re Fine Paper Antitrust Litig.*,
     840 F.2d 188 (3d Cir. 1988).........................................................15

*Janssen Prods. v. Lupin Ltd.*,
     No. 10-5954, 2016 WL 1029269 (D.N.J. Mar. 15, 2016) ............................10

*Mayberry v. Maroney*,
     529 F.2d 332 (3d Cir. 1976).........................................................16

*McGuire v. Neidig*,
  No. CV 14-1531, 2017 WL 1653609 (W.D. Pa. May 1, 2017) ....................10

*Phila. Welfare Rts. Org. v. Shapp*,
  602 F.2d 1114 (3d Cir. 1979) ..........................................................................10

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992) .............................................................................. 13, 14

*Satterfield v. Dist. Att'y Phila.*,
  872 F.3d 152 (3d Cir. 2017) ............................................................................16

*Sawka v. Healtheast, Inc.*,
  989 F.2d 138 (3d Cir. 1993) ............................................................................15

*Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*,
  No. CV 15-280, 2018 WL 2221840 (D.N.J. Mar. 22, 2018) ........................11

*Sys. Fed'n No. 91, Ry. Emps. Dep't v. Wright*,
  364 U.S. 642 (1961) ........................................................................................14

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) ........................................................................................16

*U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*,
  601 F.2d 1269 (3d Cir. 1979) ..........................................................................10

*United States v. Alsol Corp.*,
  620 F. App'x 133 (3d Cir. 2015) .....................................................................15

*United States v. Lakeland Bank*,
  No. No. 2:22-cv-05746 (D.N.J.) .................................................................8, 12

*Vazquez v. Carver*,
    18 F. Supp. 2d 503 (E.D. Pa. 1998), *aff'd*, 181 F.3d 85 (3d Cir. 1999) ........13

**Statutes**

12 C.F.R. § 1002.1 *et seq* ............................................................................6

12 C.F.R. § 1002.4(b) ...................................................................................6

15 U.S.C. § 1691(a) .....................................................................................15

42 U.S.C. § 3605(a) .....................................................................................14

**Other Authorities**

Julian Mark & Laura Meckler, *Discrimination Cases Unravel as Trump Scraps
    Core Civil Rights Tenet*, June 1, 2025, WASH. POST, https://wapo.st/43xd477
    ..................................................................................................................8

**Rules**

Fed. R. Civ. P. 60(b)(1)–(4) .......................................................................11

Fed. R. Civ. P. 60(b)(1)–(5) .........................................................................9

Fed. R. Civ. P. 60(b)(6) ................................................................................9

## I.      INTEREST OF *AMICI CURIAE*

*Amici Curiae* Housing Equality Center of Pennsylvania, POWER Interfaith, and National Fair Housing Alliance are organizations that seek to eradicate discrimination and increase opportunity for Pennsylvania citizens. *Amici Curiae* submit this Brief to the Court to assist it in assessing the consequences of the Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice filed by the United States.

## II.      INTRODUCTION

In 2023, the United States initiated this action, alleging that ESSA Bank & Trust ("ESSA" or "the Bank") committed pervasive lending discrimination in and around the City of Philadelphia. Shortly thereafter, the parties settled the case through a Consent Order that requires ESSA to take ongoing steps over five years to help remedy the harm the United States alleged ESSA caused. *See* Consent Order, ECF No. 6. After just under two years, however, the United States seeks to have the Consent Order terminated and this matter dismissed, seemingly through Rule 60 of the Federal Rules of Civil Procedure. The United States' justification for such a Motion is that ESSA has complied with one of the Order's monetary terms and is currently abiding by the other ongoing obligations that the Order establishes.

Rule 60 requires more. Relief under Rule 60 is granted only in "exceptional circumstances," *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978), none of which have been presented to this Court. This Court should therefore hold the parties to the terms of the Consent Order to which they voluntarily agreed for the remainder of the Order's agreed-upon duration, and therefore require ESSA to fully remedy the harm its practices allegedly caused to Philadelphia-area residents. The Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice should be denied.

## III.    FACTUAL BACKGROUND

### A. The United States files a fair lending action against ESSA Bank & Trust

ESSA is a Commonwealth-chartered community savings bank headquartered in Stroudsburg, Pennsylvania. Compl. ¶ 18, ECF No. 1. ESSA offers lending, depository, and related financial services throughout Pennsylvania. *Id.* The Bank operates twenty-one full-service branches across the Commonwealth, including four branches within the Philadelphia-Camden-Wilmington, PA-NJ-DE-MD Metropolitan Statistical Area ("Philadelphia MSA*").*[1] *Id.*  ¶¶ 4, 19.

---

[1] The Philadelphia MSA includes counties in Pennsylvania, New Jersey, Delaware, and Maryland, but the Complaint was limited only to redlining in the Pennsylvania counties within the Bank's lending area. Compl. ¶ 4, n. 3.

The United States began investigating ESSA after a July 2, 2021 consumer compliance examination led the FDIC to believe that "ESSA had engaged in a pattern or practice of illegal credit discrimination on the . . . basis of race." *Id.* ¶¶ 31, 33–34. The FDIC referred the matter to the United States Attorney General on June 6, 2022, and, on August 15, 2022, the United States Department of Justice informed ESSA that it had initiated an investigation into potential lending discrimination by the Bank. *Id.* ¶¶ 33–34.

Based on its investigation, the United States filed this case against ESSA on May 31, 2023, alleging that ESSA's actions violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, which collectively prohibit creditors from discriminating on the basis of race, color, or national origin in housing and lending. Compl. ¶ 2.

In its Complaint, the United States alleged that, from 2017 through at least 2021 (the "Relevant Period"), ESSA engaged in a pattern or practice of unlawful redlining[2] by "avoid[ing] providing home loans and other mortgage services in

---

[2] "Redlining" is defined by the United States as occurring when "based on the race, color, or national origin of a neighborhood's residents, lenders discourage applications for home loans and other credit services, deny equal access to home loans and other credit services, or avoid providing home loans and other credit services." Compl. ¶ 3.

majority-Black and Hispanic neighborhoods in counties in the Philadelphia MSA." *Id.* ¶ 4. The United States alleged that, during that Relevant Period, "ESSA also engaged in acts and practices directed at prospective applicants that would discourage them from applying for credit in the Philadelphia MSA." *Id.* ¶ 4.

For example, ESSA had bank branches that bordered Philadelphia, including in Upper Darby and Landsdowne. *Id.* ¶ 28. However, according to the Complaint, the Bank excluded the entirety of the City of Philadelphia from its Community Reinvestment Act ("CRA") assessment area. *Id.* ¶¶ 5, 30. In doing so, ESSA excluded "a significant number of majority-Black and Hispanic census tracts in West Philadelphia" from its CRA assessment area, creating an assessment area where over 87 percent of the census tracts were majority-white. *Id.* ¶¶ 30, 7–8.

Moreover, the United States alleged, "ESSA failed to assign loan officers to staff adequately branches that served majority-Black and Hispanic neighborhoods in the Philadelphia MSA." *Id.* ¶ 9. After the two mortgage loan officers assigned to the branches in the Philadelphia MSA left the Bank in 2017 and 2018, ESSA reassigned all four branches within the Philadelphia MSA to a single mortgage loan officer based in Allentown. *Id.* ¶¶ 36–37. From November 2018 to July 2021, that loan officer was responsible for originating home loans for seven branches, while no other loan officer was responsible for more than four branches. *Id.* ¶ 38.

The Bank additionally "did not hire or employ any non-white or bilingual loan officers." *Id.* ¶ 39.

Furthermore, according to the United States, "ESSA's marketing strategy during the Relevant Period reveal[ed] that the Bank intentionally targeted majority-white areas in the Philadelphia MSA, while excluding majority-Black and Hispanic areas." *Id.* ¶ 44. ESSA also excluded the residents of majority-Black and Hispanic census tracts in Philadelphia from its Community Home Buyer Program, which "was designed to expand home ownership opportunities for low- and moderate-income households." *Id.* ¶ 50–51.

The United States alleged that, during the Relevant Period, as a result of these practices, ESSA "generated disproportionately low numbers of loan applications and home loans from [majority-Black and Hispanic neighborhoods in the Philadelphia MSA], as compared to similarly situated lenders." *Id.* ¶ 11. For example, only 1.7 percent of ESSA's reportable mortgage loan applications in the greater Philadelphia area came from residents in majority-Black and Hispanic areas, compared to 14.4 percent for ESSA's peers. *Id.* ¶¶ 61–62. Similarly, only 1.4 percent of ESSA's residential mortgage loans in the greater Philadelphia area were made in majority-Black and Hispanic census tracts, compared to 11.7 percent for ESSA's peers. *Id.* ¶ 71. The United States alleged that ESSA was aware of its redlining risks as far back as 2017 but failed to take corrective action. *Id.* ¶ 10.

### B. This Court enters a Consent Order between the United States and ESSA Bank & Trust

Shortly after the United States filed this case, the parties reached a settlement agreement, which was memorialized in a final Consent Order entered by this Court on June 9, 2023. *See* Consent Order § 1. The Consent Order requires ESSA to take numerous affirmative steps to mitigate the harm that ESSA's alleged redlining caused. The Consent Order requires that ESSA, among other obligations:

- Permanently stop engaging in discriminatory practices that violate the FHA or ECOA and its implementing Regulation B,[3] 12 C.F.R. § 1002.1 *et seq*, Consent Order § III(A), ¶ 1;

- Train relevant employees about their obligations under the FHA, ECOA, and Regulation B, *id.* ¶ 9;

- Establish and maintain a "Community Development Officer" to monitor ESSA's compliance with fair lending laws and "oversee[] the development of the Bank's lending in majority-Black and Hispanic census tracts," *id.* ¶¶ 17–18;

---

[3] Regulation B was promulgated by the Federal Reserve over 50 years ago to carry out the ECOA. It prohibits a creditor from making oral or written statements that "would discourage on a prohibited basis a reasonable person from making or pursuing" a credit application. 12 C.F.R. § 1002.4(b).

- Hire and maintain two additional mortgage loan officers assigned to the Bank's existing Upper Darby or Lansdowne branches who are responsible for soliciting mortgage applications in majority-Black and Hispanic census tracts in the greater Philadelphia area, *id.* ¶ 19;

- Invest a minimum of $2.92 million in a Loan Subsidy Fund to increase credit for consumers applying for loans in majority-Black and Hispanic census tracts, *id.* ¶ 20;

- Amend its eligibility criteria for its Community Home Buyer Program to include any property located in the greater Philadelphia area, *id.* ¶ 24;

- Spend at least $125,000 in partnership with one or more community-based or governmental organizations to "provide the residents of majority-Black and Hispanic census tracts within a five (5)-mile radius of the Bank's Upper Darby and Lansdowne branches with services related to credit, financial education, homeownership, and foreclosure prevention," *id.* ¶ 25;

- Spend at least $250,000 on "advertising, outreach, consumer financial education, and credit counseling targeted toward those same neighborhoods, creating a plan detailing how those funds would be spent, and then annually evaluate the plan to better assist residents in obtaining credit," *id.* ¶¶ 28–30; and

- Perform multiple annual outreach, consumer financial education, and credit counseling programs, with the goal of generating qualified loan applicants from those same census tracts, *id.* ¶¶ 34–39.

The requirements of the Consent Order extend through June 9, 2028. *Id.* ¶ 49. This Court's jurisdiction to enforce the terms of the Order extends through June 9, 2025. *Id.* ¶ 62.

### C. The Trump Administration begins vacating, terminating, or dismissing civil rights consent orders with no legal justification

In recent days, the United States has started filing substantially identical motions to terminate fair lending consent orders across the Third Circuit and the nation. *See, e.g., United States v. Lakeland Bank*, No. 2:22-cv-05746 (D.N.J.), ECF No. 9; *Consumer Fin. Prot. Bureau v. Trident Mortg. Co.*, No. 2:22-cv-02936 (E.D. Pa.), ECF No. 16; *see also* Julian Mark & Laura Meckler, *Discrimination Cases Unravel as Trump Scraps Core Civil Rights Tenet*, June 1, 2025, WASH. POST, https://wapo.st/43xd477.

As in those cases, the United States provides little justification for the instant Motion, averring only that "1. ESSA has fully disbursed the loan subsidy fund ($2,920,000) as required by the Consent Order (*see id.* ¶ 53); and 2. ESSA is substantially in compliance with the other monetary and injunctive terms of the Consent Order." Unopposed Motion and Memorandum in Support to Terminate Consent Order and Dismiss with Prejudice, ECF No. 8 ("Mot. to Terminate"). The

United States provides no memorandum, no case law, no rules, and no further explanation in support of its Motion. And it provides no explanation as to how ESSA's ongoing obligations would be enforced should this Order be terminated and the matter dismissed with prejudice.

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment outside the normal appellate procedure only "under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Those circumstances are encompassed by six enumerated reasons. The first five are specific and allow for relief due to "mistake," due to "newly discovered evidence," due to "fraud . . . , misrepresentation, or misconduct," where "the judgment is void," and where "the judgment has been satisfied" or "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(1)–(5). The sixth is a catch-all provision that allows for relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

Courts have made clear that the purpose of Rule 60(b) "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner*, 572 F.2d at 977. Courts have "cautioned that relief from a judgment under Rule 60 should be granted only in exceptional circumstances." *Id.* These principles apply with equal weight even if a motion

9

brought under Rule 60(b) is unopposed or filed jointly. *See, e.g.*, *Janssen Prods. v. Lupin Ltd.*, No. 10-5954, 2016 WL 1029269, at *3 (D.N.J. Mar. 15, 2016) (joint motion); *McGuire v. Neidig*, No. CV 14-1531, 2017 WL 1653609, at *1 (W.D. Pa. May 1, 2017) (same); *Argentum Med., LLC v. Noble Biomaterials*, No. 3:08-CV-1305, 2014 WL 4351531, at *1 (M.D. Pa. Sept. 2, 2014) (unopposed motion). And they apply regardless of whether a party seeks a vacatur of a judgment or a modification of one. *See, e.g.*, *Budget Blinds, Inc. v. White*, 536 F.3d 244, 246 (3d Cir. 2008) (vacatur); *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979) (modification); *Phila. Welfare Rts. Org. v. Shapp*, 602 F.2d 1114, 1119 (3d Cir. 1979) (same).

Rule 60's requirements are particularly stringent when, as here, a court is faced with a Rule 60 motion regarding a consent decree. As the Third Circuit has explained, when parties "made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost." *U.S. Steel Corp.*, 601 F.2d at 1274.

## V.    ARGUMENT

In the face of Rule 60(b)'s exacting mandates, the United States presents no case law, no substantive argument, and no change of circumstances at all. In other words, the Third Circuit "sets forth a standard for Rule 60(b) modification of a

consent judgment that [the United States] has failed to recognize, much less satisfy." *Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*, No. CV 15-280, 2018 WL 2221840, at *1 (D.N.J. Mar. 22, 2018). The burden belongs to the United States, and it has failed to meet it. The Motion should be denied.

### A. The United States is not entitled to relief under Rule 60(b)(5)

To begin, the judgment in this case has not been "satisfied, released, or discharged" as required under the first prong of Rule 60(b)(5) nor has the United States alleged any significant change in factual conditions or law that could justify relief under the third prong of Rule 60(b)(5).[4]

### a. The Consent Order has not been satisfied

Rule 60(b)(5) allows a party to seek relief from a judgment when that "judgment has been satisfied." And in its unopposed Motion the United States implies this has occurred, claiming that the Consent Order's "requirements will remain in effect for five years or longer if . . . ESSA . . . has not invested all the

---

[4] The second prong of Rule 60(b)(5), which allows for relief from judgment where "it is based on an earlier judgment that has been reversed or vacated," is not applicable. In addition, the United States does not appear to seek relief under Rule 60(b)(1) through (b)(4). It does not, for example, allege any "mistake," "newly discovered evidence," or "fraud . . . , misrepresentation, or misconduct" that could support relief from the final judgment, nor does it allege that "the judgment is void." Fed. R. Civ. P. 60(b)(1)–(4).

money in the loan subsidy fund" and that ESSA "has fully disbursed the loan

subsidy ($2,920,000) as required by the Consent Order." Mot. to Terminate at 1.

Without a citation to a rule and without a supporting brief, whether the

United States is arguing that the judgment has been satisfied is unclear.[5]

Regardless, any implication that compliance with one term of the Consent Order—

the loan subsidy fund—satisfies all terms of the Consent Order is wrong.

Paragraph 50 of the Consent Order addresses what happens if ESSA has not

invested all the money in the loan subsidy fund at the conclusion of five years. In

that case, the Consent Order is *extended*. Consent Order ¶ 50; *see also id.* at ¶ 53

("Any time limits for performance may be *extended* by mutual written agreement

of the Parties.") (emphasis added).

Most importantly, the Consent Order has a multitude of additional terms—

both equitable and monetary—that require five years of compliance to remediate

the harm the United States alleged ESSA caused to the citizens in and around

Philadelphia—from employing loan officers to solicit applications from previously

---

[5] Less than a week prior to making this motion, the United States made a nearly identical statement to terminate a similar consent order, despite admitting that the loan subsidy fund established pursuant to that consent order has not been fully paid. *See* Mot. to Terminate, *United States v. Lakeland*, No. 2:22-cv-05746 (D.N.J.), ECF No. 9 at 2. ("The Consent Order states that its requirements will remain in effect for five years, or longer if Lakeland Bank has not invested all money in the loan subsidy fund . . . . Lakeland has also committed to continuing its disbursement of the loan subsidy fund.").

redlined neighborhoods and ending the exclusion of Philadelphians from ESSA's Community Homebuyer Program, *id.* ¶¶ 19, 24, to advertising, financial education, outreach, and annual seminars, *id.* ¶¶ 28–30, 34–39. In other words, by its own terms, this judgment is not satisfied because it requires three more years of a host of additional, ongoing actions by ESSA. *See Vazquez v. Carver*, 18 F. Supp. 2d 503, 507–08 (E.D. Pa. 1998), *aff'd*, 181 F.3d 85 (3d Cir. 1999) (denying relief under Rule 60(b)(5) from prison overcrowding consent decree despite completion of required construction of new prison and required demolition of old prison because "the Consent Decree addresses more than bricks and mortar") (internal quotation omitted).

### b. There have been no significant changes in fact or law

Relief under Rule 60(b)(5) also is available where applying the judgment prospectively "is no longer equitable" due to a "'significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992)).

The United States has alleged no change in factual conditions. For example, in support of its Motion, the United States claims that ESSA has paid out the entirety of the loan subsidy fund and "is substantially in compliance with the other monetary and injunctive terms of the Consent Order" Mot. to Terminate at 2. It is unclear what the United States considers substantial compliance, particularly given

that three of the Consent Order's five years' worth of injunctive terms lie ahead.

Regardless, ESSA substantially complying with an ongoing order so far is not

extraordinary; it is precisely what the parties and this Court would have expected

when they entered into the Consent Order, and it does not therefore provide the

United States cause for terminating the Consent Order early. *See Rufo*, 502 U.S. at

385 ("Ordinarily, however, modification should not be granted where a party relies

upon events that actually were anticipated at the time it entered into a decree.").

Moreover, while Rule 60(b)(5) may provide relief where there has been a

subsequent change in law, *see, e.g.*, *Sys. Fed'n No. 91, Ry. Emps. Dep't v.*

*Wright,* 364 U.S. 642, 652–53 (1961) (consent decree should be vacated

under Rule 60(b) in light of intervening amendments to the Railway Labor Act),

there has been no such change here. The FHA continues to include the following

prohibition:

> It shall be unlawful for any person or other entity whose business
> includes engaging in residential real estate-related transactions to
> discriminate against any person in making available such a
> transaction, or in the terms or conditions of such a transaction,
> because of race, color, religion, sex, handicap, familial status, or
> national origin.

42 U.S.C. § 3605(a). Similarly, the ECOA continues to contain the following

mandate:

> It shall be unlawful for any creditor to discriminate against any
> applicant, with respect to any aspect of a credit transaction—

    (1) on the basis of race, color, religion, national origin, sex or marital
        status, or age (provided the applicant has the capacity to contract);

15 U.S.C. § 1691(a).

New administrations have discretion to change policy priorities and to interpret and enforce the law, but that does not alter duly enacted legislation or otherwise amount to a change in law for these purposes. In sum, because the United States has not pointed to—and cannot point to—any intervening change in fact or law, Rule 60(b)(5) provides it no relief.

### B. The United States is not entitled to relief under Rule 60(b)(6)

For similar reasons, the United States cannot meet its burden under Rule 60(b)(6). "Relief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993). Such "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds*, 536 F.3d at 255; *see also United States v. Alsol Corp.*, 620 F. App'x 133, 135–36 (3d Cir. 2015). A party "may wish that it had not made [a] deal, but courts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions." *Coltec Indus. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) (quoting *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 195 (3d Cir. 1988)).

15

Furthermore, relief under Rule 60(b)(6) is inherently equitable in nature, so courts must weigh the public interest when considering whether to apply Rule 60(b)(6) to modify or vacate a consent decree. *See, e.g.*, *Clarendon Ltd. v. Nu-W. Indus., Inc.*, 936 F.2d 127, 129 (3d Cir. 1991). Courts deciding whether to grant a Rule 60(b)(6) motion should consider "the full panoply of equitable circumstances." *Satterfield v. Dist. Att'y Phila.*, 872 F.3d 152, 162 (3d Cir. 2017). Ultimately, a District Court's power under Rule 60(b)(6) is the "discretion to modify a judgment *in the interest of justice*." *Mayberry v. Maroney*, 529 F.2d 332, 335 (3d Cir. 1976) (emphasis added).

No equities would be served by termination and dismissal; in fact, quite the opposite. The public interest would be harmed by the relief sought, starting with the interests of the people in and around Philadelphia to a housing market free from discrimination. *Cf. Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 546–47 (2015) ("The [FHA] must play an important part in avoiding the Kerner Commission's grim prophecy that our Nation is moving toward two societies, one black, one white—separate and unequal. . . . The Court acknowledges the Fair Housing Act's continuing role in moving the Nation toward a more integrated society." (citation omitted)).

For example, the United States represents that "ESSA is substantially in compliance" with the Consent Order's injunctive terms. Mot. to Terminate at 2.

But compliance with the Consent Order requires adherence to three more years'
worth of *future obligations* on ESSA, including obligations to provide annual fair
lending training to its staff; to stop excluding Philadelphia residents from its
Community Home Buyer Program; to hire and retain loan officers to solicit
applications in previously redlined Philadelphia-area neighborhoods; to spend
funds on advertising, outreach, consumer financial education, and credit
counseling; to provide annual outreach programs; and to provide annual consumer
education program seminars.

The premature loss of these services and programs would be detrimental to
the majority-Black and Hispanic Philadelphia-area neighborhoods that the United
States alleged ESSA harmed and that the Consent Order was intended to support.
Termination of the Order and dismissal of the action would relieve ESSA of all
these continuing obligations and would therefore be contrary to the interest of
justice.

In addition to undermining the needs of the residents of the Philadelphia
area, this Motion has broader implications for another critical constituent: the
general public. It is not just the parties' interest at stake when seeking relief under
Rule 60, but "the public's interest in the integrity of the judiciary." *Argentum Med.,
LLC*, 2014 WL 4351531, at *3 (denying motion under Rule 60(b)). "As
emphasized by the Third Circuit, the Court's 'duty lies not in the direction of an

automatic acquiescence to the parties' request, but rather with a deliberate consideration of the policy that will best serve the public good.'" *Id.* (quoting *Clarendon*, 936 F.2d at 129). This is because "[a] judgment belongs, not only to the litigants, but also to society, as a whole." *Devore v. City of Phila.*, No. 00-cv-3598, 2003 WL 21961975, at *2 (E.D. Pa. June 24, 2003). The United States has failed to present any support to justify the public losing this Court's judgment now.

New administrations inevitably mean new priorities, but that does not empower any administration to undo the final judgment this Court entered without meeting the established requirements for doing so. The United States has made no showing that it meets the standard under Rule 60(b)(6), and it should therefore be granted no relief.

## VI.    CONCLUSION

The principles of Rule 60(b) counsel against granting the relief sought by the United States. This Court should deny the Motion of the United States.

Dated: June 9, 2025

Respectfully submitted,

By: /s/ Daniel Urevick-Ackelsberg
Daniel Urevick-Ackelsberg
Olivia Mania
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1316
dackelsberg@pubintlaw.org

Eli Segal
John S. Stapleton
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
(215) 561-1500
esegal@stapletonsegal.com

Attorneys for *Amici Curiae*