IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>ESSA BANK & TRUST,<br><br>                    Defendant. | Civil Action No. 23-cv-2065-MMB |

**DEFENDANT'S MEMORANDUM IN OPPOSITION**
**TO ARGUMENTS OF *AMICI CURIAE***

## I.        INTRODUCTION

In accordance with the Court's Order dated June 17, 2025, ECF No. 12, Defendant, ESSA Bank & Trust ("ESSA")[1], respectfully submits its response to the arguments of *Amici Curiae* opposing the Unopposed Motion (ECF No. 8) ("Motion") as set forth in their Brief (ECF No. 13).

ESSA entered into a Consent Order with the United States Department of Justice ("United States") effective on June 9, 2023. The Consent Order resolved all claims alleging ESSA engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act (FHA), 42 U.S.C. § § 3601-3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § § 1691-1691f, Regulation B, 12 C.F.R. § 1002.1 *et seq*., by discriminating based on race, color, and national origin.

On May 25, 2025, the United States filed the Motion, an unopposed motion to terminate the Consent Order and dismiss the Complaint with prejudice. Three advocacy groups, the Housing

---

[1] ESSA is in the final stages of an agreed-upon merger with CNB Bank. The merger recently received final regulatory approval, as set out in this CNB press release of June 30, 2025 (https://cnbbank.bank/who-we-are/news/approval-for-merger). The merger is scheduled to close on July 23.

Equality Center of Pennsylvania, POWER Interfaith, and National Fair Housing Alliance ("*Amici Curiae*"), moved for and were granted leave to file a brief arguing that that the Consent Order should not be terminated, and the Complaint not dismissed.

The Court should grant the United States' Motion. The *amicus* brief refers to certain terms of the Consent Order that it speculates may not have been fulfilled and that could still require the supervision of this Court. Yet the *Amici Curiae* show no actual facts that would justify denying the motion. In fact, as set forth below and in the attached Declaration of ESSA's President and Chief Executive Officer, Gary S. Olson, ESSA is complying with the Consent Order in every respect since its entry in June 2023, and the United States' motion is in fact appropriate. While ESSA respects that *Amici Curiae* may disagree with the United States over the appropriate prioritization of Justice Department resources, that policy debate does not justify denying the motion filed by the United States in this particular case and with respect to this particular bank.

## II.    FACTUAL BACKGROUND

Since the Consent Order took effect, ESSA has been complying with all of its terms, with no concerns raised by the United States. ESSA's record of compliance has been appropriately documented and affirmatively approved by the United States at every stage.

For example, the first terms of the Consent Order pertain to ESSA's fair lending practices. ESSA timely conducted and submitted a detailed assessment of its fair lending program, received non-objection from the United States to its Fair Lending Status Report and Compliance Plan ("Compliance Plan"), and implemented it within 14 days in compliance with CO ¶5, CO ¶6, and CO ¶7.[2] The Compliance Plan revised mortgage lending policies that allegedly posed redlining

---

[2] ESSA does not wish to burden the record unnecessarily, and so has not attached the voluminous documentation substantiating these facts and those set forth in the attached Declaration, but would be happy to provide the Court with full copies of all materials referenced herein upon request.

risk, adopted written policies and procedures for training and monitoring of loan officers' mortgage marketing activities, and described ESSA's engagement with an experienced consulting firm to provide an independent third-party statistical analysis of its HMDA loan data, all in compliance with CO ¶6.a., CO ¶6.b., and CO ¶6.c.

ESSA also, in compliance with the Consent Order's requirements regarding fair lending policies, CO ¶8, timely sent a copy of the Complaint and Consent Order to all relevant bank staff and officials and provided a system for questions regarding and acknowledgment of the documents. Such materials were also sent to relevant bank staff and officials who joined ESSA after the Consent Order's implementation. In each of the two years that the Consent Order has been in effect, ESSA has provided training to its relevant staff and officials regarding ESSA's obligations under ECOA, Regulation B, the FHA, and the Consent Order. That annual training has been conducted by a qualified third-party trainer in compliance with CO ¶9, CO ¶10, and CO ¶11.

ESSA also timely secured a Community Credit Needs Assessment ("CCNA") that was conducted by a qualified third-party and timely submitted to the United States on December 5, 2023. After receiving non-objection from the United States on March 15, 2024, in compliance with CO ¶13 and CO ¶14, ESSA presented the CCNA to all applicable committees. ESSA also submitted to the United States on April 9, 2024 a "remedial plan" that detailed the actions ESSA proposed to take to comply with the Consent Order, in compliance with CO ¶15 and CO ¶16. The United States raised no objection to the "remedial plan."

In addition, ESSA timely hired additional personnel to satisfy the Consent Order. It hired a full-time Community Development Officer as required by CO ¶17 with responsibilities that comply with CO ¶18, and hired two additional mortgage loan officers, assigned to and resident in ESSA's Upper Darby or Lansdowne branches, tasked with soliciting mortgage applications in

majority-Black and Hispanic census tracts in the bank's Covered Lending Area, as required by CO ¶19.

The principal financial term in the Consent Order is the obligation to invest at least $2.92 million in a loan subsidy fund. On July 25, 2023, ESSA established the loan subsidy fund designated for mortgage loans in majority-Black and Hispanic census tracts in accordance with CO ¶20, CO ¶21, CO ¶22, and CO ¶23. As of May 31, 2025, ESSA had closed 163 loans for a total amount dispersed of $2,934,000, thus exceeding the requirements of the CO even before the CO had reached its second anniversary date.

Pursuant to the Consent Order (CO ¶25, CO ¶26, and CO ¶27), ESSA was required to modify its Community Development Partnership Program by partnering with community-based and governmental organizations that provide residents of majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches with financial services; and, over five years, to spend at least $125,000 on associated services that increase access to residential mortgage credit.

Accordingly, ESSA timely modified its Community Development Partnership Program by partnering with the Rise Up Fund, Southwest Community Development Corporation, and the Urban League of Philadelphia and timely submitted to the United States its proposal describing the implementation of community development partnerships with these organizations. Since receiving the United States' non-objection, ESSA has conducted annual evaluations of such partnerships. To date, ESSA has spent $61,500 of the required $125,000 in connection with these community partnerships. ESSA also timely amended the eligibility criteria for its existing Community Home Buyer Program to include any property located within its Covered Lending Area, in compliance with CO ¶24.

An additional program required by the Consent Order is the Advertising, Outreach, and Education Plan ("Outreach Plan"), which requires ESSA to spend at least $250,000 over a five-year period on advertising, outreach, consumer financial education, and credit counseling in majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby and Lansdowne branches. In compliance with CO ¶28, ESSA timely submitted to the United States its Outreach Plan, which outlined how the $250,000 would be spent. Receiving the United States' non-objection, ESSA thereupon timely implemented its Outreach Plan and annually has evaluated its strategies in compliance with CO ¶30. Pursuant to CO ¶29, CO ¶31 and CO ¶32, since the Effective Date ESSA has spent $108,968.83 in advertising its residential loan products to majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches to generate mortgage loan applications. Such advertisements include multiple ad campaigns in digital, print, billboards, bus shelters, laundromats, churches, and bank branches; and point-of-distribution materials such as posters and brochures with appropriate references required by CO ¶33.

Since the Effective Date, ESSA has spent an additional $30,987.30 implementing its Outreach Plan: pursuant to CO ¶34 and CO ¶35, it has timely conducted two outreach programs per year in majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches that provided information on ESSA's products and services and helped develop business relationships; it has sponsored non-profit events in these tracts that were also aimed to strengthen community relationships and generate home mortgage applications; and it has partnered with a qualified consultant to develop a consumer education program, holding two annual seminars targeted towards residents in majority-Black and Hispanic census tracts within a

five-mile radius of its Upper Darby or Lansdowne branches, in compliance with CO ¶36, CO ¶37, CO ¶38, and CO ¶39.

Thus, in two years ESSA has spent $139,956.13 towards satisfying the minimum requirement of $250,000 in connection with its Outreach Plan.

ESSA has also dedicated a portion of its website to providing information on these additional community services, pursuant to CO ¶40.

The Consent Order requires ESSA to evaluate and monitor its adherence to the provisions of the Consent Order. ESSA has done so. It has timely submitted its data to the Federal Financial Institutions Examination Council ("FFIEC") on an annual basis, in compliance with CO ¶42. It has also timely submitted the required annual report to the United States with all necessary plans, programs and materials that reflect ESSA's progress in complying with the Consent Order's terms, in compliance with CO ¶43. Finally, ESSA established a Fair Lending Committee which has provided quarterly updates to its board of directors, in compliance with CO ¶45, CO ¶46, CO ¶47, and CO ¶48.

*Amici Curiae* refer this Court to the decision of the District Court for the Northern District of Illinois in Bureau of Consumer Fin. Prot. v. Townstone Fin., No. 20-cv-4176, slip op. (N.D. Ill. June 12, 2025), as "supplemental authority." That matter pertained to a mortgage broker/lender's comments on a radio show that allegedly discouraged prospective African Americans from applying for mortgages. ESSA respectfully submits that the Illinois case is not analogous to the present matter and certainly does not support denying the United States' Motion here.

Here, ESSA and the United States entered into a Consent Order due to alleged lending practices violating the Fair Housing Act and ECOA. Unlike the Illinois case, the claim against ESSA was based on statistical analysis only. See Complaint ¶¶ 60-69, 71-77. The Complaint made

no allegations whatsoever that anyone at ESSA ever engaged in any direct discriminatory conduct or made any racially discriminatory statements. This fact is a critical distinction between the present action and the Illinois case, where the defendant had allegedly engaged in obviously offensive conduct. The Illinois case is not germane to the matter at bar.

The fact that the Complaint in this matter contains no such allegations is not inadvertent. Before filing the Complaint and reaching a settlement with ESSA by way of the Consent Order in this matter, the Department of Justice ("DOJ") conducted an extensive investigation of ESSA to determine, among other things, whether ESSA over a multi-year period had ever taken any actions with an intent to discriminate or made any racially discriminative statements. See Complaint ¶¶ 33-34. The DOJ investigation took place following a referral by the FDIC, which had already conducted its own investigation. *Id*. ¶¶ 31-33. In all of this time, through two separate investigations, the United States discovered *no such actions or statements*. In the Complaint, no such actions or statements were alleged, which is not surprising since ESSA never took any such actions and never made any such statements. And in fact, ESSA vigorously contested the statistical methodology used by the United States which served as the sole basis of the Complaint. ESSA settled this case without admitting liability. The settlement, embodied by the Consent Order, notably included no civil penalties levied against ESSA. Nor did it require ESSA to open up a new branch in the allegedly underserved lending area.

In announcing the settlement, ESSA's President and CEO, Mr. Olson, noted that the settlement reflected the bank's "business decision to avoid the costs, uncertainties, and distractions of litigation," and observed that "during the time period covered by the government's Complaint, ESSA did not receive a single fair lending complaint from any customer or potential customer." Mr. Olson also pointed out that in 2018 (within the time period covered by the Complaint), ESSA

even opened a branch and business center in downtown Allentown, PA in a majority minority census tract.

Mr. Olson added: "ESSA and its Board of Directors believe this is a constructive resolution to a dispute that has lasted several years," concluding: "It is consistent with our guiding principles and longstanding commitment to provide equal lending opportunities to all of the communities we are privileged to serve. We plan on using these loan subsidy funds to expand opportunities for qualified borrowers who can benefit from this assistance. We're happy and pleased to help families purchase homes. It is simply the right thing to do." https://essabank.com/press-releases/essa-bancorp-inc-announces-settlement-with-department-of-justice/ (last accessed July 10, 2025).

While ESSA fully cooperated with investigations by both the FDIC and the DOJ, ESSA vigorously contested the claims against it and the statistical methodology and analysis on which those claims were based; but after several years of complex and expensive pre-litigation, ESSA made a business decision to settle the matter on the terms set out in the Consent Order. As noted above, those terms contained no civil penalty and required no opening of additional branches. And also as noted above, ESSA has already complied with the Consent Order's principal financial commitment – in less than two years instead of the allotted five.

Under these circumstances, ESSA is gratified that after two years of closely monitoring its real-time compliance with the Consent Order and the lending discrimination laws, the United States concluded that the Consent Order is no longer necessary and that a voluntarily dismissal of the Complaint with prejudice is in order.

### III.    Conclusion

While *Amici Curiae* raise hypothetical issues, they are misdirected at ESSA. Indeed, *Amici Curiae* present the Court with no facts that would justify prolonging this action. ESSA respectfully submits that it has amply demonstrated its compliance with the Consent Order over the past two years. It is thus entirely appropriate for the United States to have decided that its resources are better deployed on other matters. For the foregoing reasons, ESSA respectfully requests that the Court grant the United States' Motion.

Respectfully submitted,

Dated:  July 14, 2025

/s/ Jeremy D. Mishkin
Richard M. Simins
Jeremy D. Mishkin
Montgomery McCracken
  Walker & Rhoads, LLP
1735 Market Street, 20th Floor
Philadelphia, PA 19103-7505
Phone:  215-772-1500
Email:
rsimins@mmwr.com
jmishkin@mmwr.com

*Attorneys for Defendant*
*ESSA Bank & Trust*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ESSA BANK & TRUST,

        Defendant.

Civil Action No. 23-cv-2065-MMB

## DECLARATION OF GARY S. OLSON

I, Gary S. Olson, declare as follows:

1. I am the President and Chief Executive Officer of ESSA Bank & Trust ("ESSA").

2. I submit this Declaration in support of ESSA's memorandum responding to arguments of *Amici Curiae* opposing the United States' motion to terminate the Consent Order and to dismiss the Complaint with prejudice. ESSA does not oppose the United States' motion.

3. This Declaration is based on my personal knowledge and review of business records and information within the knowledge of ESSA. If called upon, I could competently testify thereto.

4. ESSA is committed to fair lending compliance. Upon the Effective Date of ESSA's Consent Order with the United States (June 9, 2023), I assumed primary responsibility for monitoring and coordinating ESSA's adherence to the provisions of the Consent Order. In connection with that responsibility, I have reviewed all plans, reports, programs, policies and procedures submitted to the United States as required by the Consent Order. Our objective – as articulated by the Consent Order – has been to coordinate efforts and strategies across business lines to drive the expansion of ESSA's existing loan portfolio focusing on ESSA's Covered

1

Lending Area-eligible community development activities, and to guide the development and implementation of a program to generate increased consumer and business loan application volume for low-to-moderate-income individuals, households and communities, as well as majority-minority communities, within ESSA's Covered Lending Area. I believe we are meeting this objective. Not once have we been cited by the United States for a violation or deficiency under the Consent Order, and we have already spent down the $2,920,000 loan subsidy fund even though the Consent Order gave us five years to do so.

5.    The Consent Order required ESSA to conduct and implement a detailed Fair Lending Status Report and Compliance Plan ("Compliance Plan"). ESSA timely submitted its proposed Compliance Plan to the United States and timely began implementing it within fourteen days of receiving non-objection from the United States. The Compliance Plan revised mortgage lending policies that allegedly posed redlining risk, adopted written policies and procedures for training and monitoring of loan officers' mortgage marketing activities, and described ESSA's engagement with an experienced consulting firm to provide an independent third-party statistical analysis of its HMDA loan data.

6.    The Consent Order required ESSA to send a copy of the Complaint and Consent Order to all relevant bank staff and officials and to provide a system for questions regarding and acknowledgment of the documents. ESSA created such a system and sent such materials to all relevant bank staff and officials, including those that joined ESSA after the Consent Order's Effective Date. In addition, in each of the two years that the Consent Order has been in effect, ESSA has provided annual training to its relevant staff and officials regarding ESSA's obligations under the fair lending laws and the Consent Order. The training has been conducted by a qualified third-party trainer approved by the United States.

7.   The Consent Order required ESSA to secure a Community Credit Needs Assessment ("CCNA"). The CCNA was conducted by an independent, qualified third-party. ESSA submitted the CCNA to the United States timely on December 5, 2023; received non-objection from the United States on March 15, 2024; presented the CCNA to all applicable committees; and submitted to the United States on April 9, 2024 a "remedial plan" detailing the actions ESSA proposed to take to comply with the Consent Order. The United States did not object to the "remedial plan."

8.   ESSA has hired additional personnel required by the Consent Order including a full-time Community Development Officer whose job responsibilities are concurrent with the job description set out in paragraphs 17 and 18 of the Consent Order. ESSA also hired two additional mortgage loan officers assigned to and resident in its Upper Darby or Lansdowne branches, tasked with soliciting mortgage applications in majority-Black and Hispanic census tracts in ESSA's Covered Lending Area.

9.   The Consent Order requires ESSA to invest, over five years, at least $2.92 million in a loan subsidy fund designated for mortgage loans in majority-Black and Hispanic census tracts in its Covered Lending Area. On July 25, 2023, ESSA timely established the loan subsidy fund. As of May 31, 2025, ESSA had closed 163 loans for a total amount dispersed of $2,934,000, thus already exceeding the amount mandated by the Consent Order.

10.   ESSA was required by the Consent Order to modify its Community Development Partnership Program by partnering with community-based and governmental organizations that provide residents of majority-Black and Hispanic census tracts within a five-mile radius of its the bank's Upper Darby or Lansdowne branches with financial services; and, over five years, to spend at least $125,000 on associated services that increase access to residential mortgage credit.

3

ESSA accordingly partnered with the Rise Up Fund, Southwest Community Development Corporation, and the Urban League of Philadelphia and timely submitted to the United States a proposal describing the implementation of these community development partnerships; received a non-objection from the United States; and has since conducted annual evaluations of these community partnerships. To date, ESSA has spent $61,500 of the required $125,000 across the three partnerships. ESSA also timely amended the eligibility criteria for its existing Community Home Buyer Program to include any property located within its Covered Lending Area.

11. ESSA is also required by the Consent Order to spend at least $250,000, over five years, on advertising, outreach, consumer financial education, and credit counseling in majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches. In this regard, ESSA timely submitted to the United States its Advertising, Outreach, and Education Plan ("Outreach Plan"), which outlined how the $250,000 would be spent. Upon receipt of the United States' non-objection, ESSA timely implemented its Outreach Plan and has annually evaluated its strategies.

12. Since the Effective Date, ESSA has spent $108,968.83 in advertising its residential loan products to majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches to generate mortgage loan applications. Such advertisements include multiple ad campaigns in digital, print, billboards, bus shelters, laundromats, churches, and bank branches; and point-of-distribution materials such as posters and brochures with appropriate "equal housing opportunity" references as required by paragraph 33 of Consent Order.

13. Since the Effective Date, ESSA has also spent an additional $30,987.30 implementing its Outreach Plan by timely conducting two outreach programs per year in majority-Black and

Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches that provide information on ESSA's products and services and help develop business relationships; sponsoring non-profit events in these census tracts aimed at strengthening community relationships and generating home mortgage applications; and partnering with a qualified consultant to develop a consumer education program, holding two annual seminars targeted towards residents in majority-Black and Hispanic census tracts within a five-mile radius of its Upper Darby or Lansdowne branches. In addition, ESSA has dedicated a portion of its website to providing information on these additional community services.

14. Thus, in two years ESSA has spent $139,956.13 towards satisfying the minimum requirement of $250,000 in connection with its Outreach Plan.

15. ESSA is required under the Consent Order annually to submit its data to the Federal Financial Institutions Examination Council ("FFEIC") and provide annual reports to the United States with all necessary plans, programs and materials that reflect ESSA's progress in complying with the Consent Order. ESSA has timely done so on both counts. ESSA also timely established a Fair Lending Committee which has provided quarterly updates to ESSA's board of directors since the Effective Date.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July  11, 2025

_____
Gary S. Olson
ESSA Bank & Trust
President and Chief Executive Officer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2025 I caused a copy of the foregoing Brief and

Declaration to be filed with the Court and served via the Court's electronic filing system.


Dated:  July 14, 2025                        <u>/s/ Jeremy D. Mishkin</u>
                                             Jeremy D. Mishkin
                                             Montgomery McCracken
                                               Walker & Rhoads, LLP
                                             1735 Market Street, 20th Floor
                                             Philadelphia, PA 19103-7505
                                             Phone:  215-772-1500
                                             Email:  jmishkin@mmwr.com

                                             *Attorney for Defendant*
                                             *ESSA Bank & Trust*