IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 23-cv-2065- MMB |
| ESSA BANK & TRUST, | |
| Defendant. | |

**UNITED STATES OF AMERICA'S
RESPONSE TO BRIEF OF *AMICI CURIAE***

Plaintiff, United States of America ("United States") hereby files its response to the Proposed Brief of *Amici Curiae* in Opposition to Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice [ECF No. 13]. Before entering the Parties' proposed Consent Order, the Court added language to Paragraph 62 that indicated that, while the requirements of the Order would remain in effect for five years, this Court would only "retain jurisdiction over this civil action to enforce the terms of this Consent Order, for up to two years." ECF No. 6 at ¶ 62; *compare* ECF No. 1-8 at ¶ 62.

One week before the Court's jurisdiction to enforce the terms of the Consent Order expired, the United States filed a motion to terminate the Consent Order and dismiss this action with prejudice. *See* ECF No. 8 ("Motion to Terminate"). In so moving, the United States sought to clarify any uncertainty as to whether the Consent Order would have prospective application to the parties beyond the two-year mark. In its Motion to Terminate, the United States advised the Court that ESSA (1) had demonstrated a commitment to remediation, (2) had fully disbursed the loan subsidy fund, and (3) was substantially in compliance with the other monetary and injunctive

terms of the Consent Order. *Id.* at 1-2. Defendant ESSA Bank and Trust ("ESSA") did not oppose the motion. *Id.* at 3.

*Amici* oppose termination on the sole ground that the Consent Order was proposed for a five-year duration and the Court should hold the parties to that term, regardless of whether the Consent Order has achieved its purpose. This rigid and inflexible standard contravenes the court's inherent authority and the explicit terms of the Consent Order for the parties to seek modifications, as well as Federal Rule of Civil Procedure 60(b)(5)'s recognition that termination of judgments is appropriate where there is substantial compliance or where maintaining the judgment is no longer equitable. Under either standard, there is no basis for continued enforcement[1] of the judgment and the Court should move to terminate the Consent Order and dismiss this action with prejudice.

## I.  BACKGROUND

On May 31, 2023, the United States filed a Complaint alleging that ESSA violated the Equal Credit Opportunity Act (ECOA) and the Fair Housing Act (FHA) by engaging in unlawful redlining in the Philadelphia Metropolitan Statistical Area. ECF No. 1.[2] On the same date, the parties filed a proposed Consent Order with the Court. ECF No. 1-8.

The Consent Order included provisions typical of redlining resolutions, including ESSA undertaking a detailed assessment of its fair lending program; submitting a fair

---

[1] Indeed, given the Court's unequivocal statement that it would only retain jurisdiction to enforce the terms of the Consent Order until June 9, 2025, continued enforcement would appear to conflict with the express terms of the Order. *See* ECF No. 6 at ¶ 62.

[2] Redlining occurs when lenders discourage applications for home loans and other credit services, deny equal access to home loans and other credit services, or avoid providing home loans and other credit services, based on the race, color, or national origin of a neighborhood's residents. *Id.*

lending compliance plan; conducting fair lending training; conducting an assessment of credit needs in the affected neighborhoods; appointing a full-time Community Development Officer; hiring additional mortgage loan officers; establishing a Fair Lending Committee; investing in community partnerships and outreach, marketing and advertising of credit opportunities, and, most importantly, establishing and disbursing a $2.92 million loan subsidy fund to assist applicants in obtaining home loans.

On June 9, 2023, the Court entered the Consent Order, which also included a provision that the order may be modified "upon approval of the Court, by motion by any party." ECF No. 6, at ¶53. Although the parties proposed an initial five-year term for the Consent Order, the Court specifically amended paragraph 62 to stipulate that "[t]he Court will retain jurisdiction over this civil action to enforce the terms of this Consent Order, for up to two years." *Id*. at ¶62. The Court's jurisdiction to enforce the Consent Order was thus set to expire on June 9, 2025.

Three days before that expiration date, on June 6, 2025, the United States filed its Motion to Terminate. *See* ECF No. 8. In so moving, the United States advised the Court that ESSA (1) had demonstrated a commitment to remediation, (2) had fully disbursed the loan subsidy fund, and (3) was substantially in compliance with the other monetary and injunctive terms of the Consent Order. *Id*. at 1-2. The United States relied on the Consent Order's explicit provisions permitting the parties to move the court for any modification.

On June 9, 2025 – the same day that the Court's jurisdiction to enforce the terms of the Consent Order was set to expire – Housing Equality Center of Pennsylvania, POWER Interfaith and National Fair Housing Alliance (the "*Amici*") filed a motion seeking leave to participate as *amici curiae* "to assist this Court in assessing the

consequences" of the Motion to Terminate. ECF No. 9. On June 13, 2025, *Amici Curiae* filed a Notice of Supplemental Authority. *See* ECF No. 11.

On June 17, 2025, the Court granted *Amici's* motion for leave to file their Brief in Opposition and ordered the Clerk to docket the brief. ECF No. 12. The Court ordered that the parties file a response to the arguments of *Amici* within thirty days. *Id.* On July 14, 2025, ESSA filed a memorandum in opposition to the arguments of *Amici,* including a declaration from ESSA's CEO Gary S. Olson that details the actions that ESSA has taken to achieve substantial compliance with the Consent Order. ECF No. 16.

## II.    LEGAL STANDARD

Consent orders that are intended to redress past discrimination and to eliminate future discrimination "fall squarely within that class of decrees that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *United States v. City of Miami*, 2 F.3d 1497, 1505-06 (1993). In cases where a consent order may remain in force for years at a time, it is important to recognize that changed conditions may render continued enforcement unnecessary or detrimental to the public interest. *See Horne v. Flores,* 557 U.S. 433, 448 (2009) (noting that "the passage of time frequently brings about changed circumstances . . . that warrant reexamination of the original judgment.")

Here, there are two bases for termination of the Consent Order. The first, and upon which the United States's Motion to Terminate relied, is the well-settled principle that a court retains the inherent authority to terminate or modify a consent decree as an exercise of that court's equitable power. *See Freeman v. Pitts*, 503 U.S. 467, 487 (1992); *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267 (3d Cir. 2001). "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical

way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision." *Freeman*, 503 U.S. at 487. Recognizing the need for a flexible response to changing conditions, the parties to this action expressly agreed to – and the Court approved and entered – a Consent Decree that permits modification "upon approval of the Court, by motion by any party." ECF No. 6, at ¶53.

Second, Federal Rule of Civil Procedure 60(b)(5) provides that a judgment or consent decree may be modified or terminated if (1) the judgment has been satisfied, released, or discharged, (2) it is based on an earlier judgment that has been reversed or vacated, or (3) applying it prospectively is no longer equitable. Fed. R. Civ. Proc. 60(b)(5). As Rule 60(b)(5) uses the disjunctive "or," each of the provision's three grounds for relief is independently sufficient and a movant can prevail if any of the grounds apply. *Horne*, 557 U.S. at 454.[3]

Here, ESSA's course of performance justifies early termination of the Consent Order and dismissal of this action under both standards. ESSA has substantially complied with the terms of the Consent Decree, including complete disbursement of a $2.92 million loan subsidy fund provision more than three years in advance of the deadline set in the Consent Order.

## III. THE MOTION TO TERMINATE SHOULD BE GRANTED AS EARLY TERMINATION IS SUPPORTED BY BOTH PARTIES AND IS IN THE INTEREST OF JUSTICE

---

[3] Courts have uniformly held that Rule 60(b) should be liberally construed to do substantial justice. *See Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951); *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015). "The rule is broadly phrased and many of the itemized grounds are overlapping, freeing Courts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds." *Frew*, 780 F.3d at 327.

The Motion to Terminate should be granted as (1) termination is consistent with two-year limit on the Court's jurisdiction to enforce the terms of the Consent Order, (2) a modification of the term is explicitly authorized under the Consent Order and (3) the authority to approve such a modification is within the Court's inherent equitable powers.

While the Consent Order states that the requirements of the Order "shall remain in effect for five years[,]" the Court added language to the Order specifically stating that it would only exercise jurisdiction for up to two years following the entry of the Order – i.e. until June 9, 2023. ECF No. 6 at ¶62. This language suggests that the Court had some reservations over the length of the initial term and did not believe that a five-year term was necessarily essential to achieving the fundamental purpose of the Consent Order. Indeed, the Court's two-year limit on its jurisdiction to enforce would ultimately prove prescient, as ESSA was able to fully distribute the loan subsidy fund in just under two years.

Fortunately, the Consent Order provides the Parties with the flexibility to adjust the term of the Order after it has been entered. Paragraph 53 of the Consent Order provides that modifications to the Consent Order may be made "upon approval by of the Court, by motion of any party." ECF No. 6 at ¶53. Given the degree of flexibility provided in Paragraph 53, refusing to allow early termination when both Parties agree that there has been substantial compliance would deny the Parties the relief that was originally bargained for in the Consent Order. A court should interpret a consent decree as written and should not impose terms that are inconsistent with those agreed to by the parties. *See Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir.1990).

Notably, *Amici* do not cite any case where a court refused to grant a motion to terminate a consent decree when the decree explicitly provided for modifications and all

6

parties agreed that there was substantial compliance and consented to early termination. Indeed, the United States has previously filed similar motions to terminate in redlining cases and such motions have been routinely and regularly granted. *See*, *e.g., Consumer Financial Protection Bureau v. Trident Mortgage Company, LP*, No. 2:22-cv-2936-KNS (E.D. Pa. June 2, 2025); *United States v. Cadence Bank, N.A.*, No. 1:21-CV-03586-JPB (N.D. Ga. May 29, 2025); *United States v. First Merchants Bank*, No. 1:19-cv-02365-JPH-MPB (S.D. Ind. Dec. 28, 2022); *United States v. Union Savings Bank*, No. 1:16-cv-1172-TSB (S.D. Ohio Feb. 21,2020); *United States v. Bancorpsouth Bank*, No.1:16-cv-0118-MPM-DAS (N.D. Miss. Jan. 27, 2020).

The United States invoked the explicit language of the Consent Order to move for termination because ESSA achieved the fundamental purpose of the Order, which is to remediate the effects of past lending discrimination and to prevent future discrimination from occurring. A consent order's purpose has been fully achieved where (1) there is current, substantial, good faith compliance with the consent order and (2) the subject of the order "is unlikely. . . to return to its former ways" in the absence of the consent order. *Bd. of Educ. v. Dowell*, 498 U.S. 237, 247 (1991); *see also Peery v. City of Miami*, 977 F.3d 1061, 1075 (11th Cir. 2020). Where a "durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Horne*, 557 U.S. at 450.

ESSA's performance since entry of the Consent Order demonstrates both substantial compliance and implementation of a durable remedy. Under the Consent Order, ESSA was required to "invest a minimum of $2.92 million in a loan subsidy fund to increase credit for home mortgage loans, home improvement loans, and home refinance loans for consumers applying for loans in majority-Black and Hispanic census

tracts in the Bank's Covered Lending Area." ECF No. 6 at ¶20. ESSA was required to use the loan subsidy fund to provide qualified applicants with down payment assistance, interest discounts, payment of mortgage insurance premiums, or assistance with closing costs. *Id* at ¶21. As no qualified applicant could receive more than $18,000 in subsidies, full distribution of the Loan Subsidy Fund required ESSA to originate no less than 163 new loans in majority-Black and Hispanic census tracts in the Bank's Covered Lending Area. *Id.*

Remarkably, less than two years after the Consent Order was entered, ESSA has fully disbursed the loan subsidy fund. ESSA has also substantially complied with the remaining equitable and monetary provisions of the Consent Order, as evidenced by the absence of the United States having to move this Court for enforcement. The speed with which ESSA was able to implement the key element of the Consent Order and its substantial compliance with the remaining provisions also strongly indicate that it has implemented a durable remedy in this case.

This Court has the inherent authority to approve proposed modifications agreed upon by both Parties. A court's equitable power to modify a consent decree is broad, especially where, as here, the decree is aimed at remedying discrimination. *See Holland*, 246 F.3d at 282. Given the remedial goals of such decrees, a court must be free to adjust the terms of a consent order "in a feasible and practical way" and—when appropriate—to withdraw the court's supervision and control when the defendant has achieved a durable remedy. *See, e.g., Freeman*, 503 U.S. at 487-498.

IV.    **THE MOTION TO TERMINATE SHOULD ALSO BE GRANTED UNDER RULE 60(b)(5) AS ESSA HAS SATISFIED THE JUDGMENT AND PROSPECTIVE APPLICATION IS NO LONGER EQUITABLE**

A.    **ESSA Has Substantially Complied with the Consent Order**

Federal Rule of Civil Procedure 60(b)(5) authorizes a court to terminate a consent decree if has been "satisfied" through substantial compliance with the decree's requirements. *Peery*, 977 F.3d at 1075 (11th Cir. 2020). In evaluating a motion to terminate, a court should begin "by determining the basic purpose of the decree" and "[i]f there is good-faith compliance, the decree is satisfied . . .the court may terminate it." *Id.*; see also *United States v. City of Miami*, 2 F.3d. at 1504. As a consent decree is a contract, compliance with the decree is measured in terms of substantial performance, or substantial compliance. *Peery*, 977 F.3d at 1075. Substantial compliance "exists when the consent decree's fundamental purpose has been accomplished, and any deviations from the decree are unintentional and so minor or trivial as not substantially to defeat the object which the parties intended to accomplish." *Id.* (internal quotations omitted).

Termination of the Consent Order is appropriate in light of ESSA's current, substantial, good faith compliance with the terms of the Consent Order. The most important element of a redlining settlement is the establishment of a loan subsidy fund, which not only serves a remedial purpose by addressing past discrimination by increasing the availability of credit to underserved communities, it also serves as a key measure of an institution's progress toward achieving parity with its market peers. To distribute the loan subsidy fund, an institution must by necessity expand its marketing, outreach, staffing, and geographical footprint to allow it to originate the requisite number of loans in previously redlined neighborhoods. And as set forth above, ESSA satisfied this provision within two years of entry.

9

*Amici* argue that ESSA has not substantially complied with the Consent Order simply because the Consent Order "requires three more years of a host of additional, ongoing actions by ESSA." ECF No. 13 at 13. Yet, it is clear that strict and literal compliance with terms of a consent order is not required to establish substantial compliance. *See, e.g., Peery*, 977 F.3d at 1075-76 (finding substantial compliance even where there were alleged violations of the consent decree). A party may be found to be in substantial compliance so long as any deviation from provisions of the consent order does not substantially defeat the object which the parties intend to accomplish. *Id.*

The five-year term, by itself, is not essential to the fundamental purpose of the Consent Order and *Amici* fail to cite any specific outstanding obligations that are critical to implementing a durable remedy. The initial five-year term merely represents an estimate of the time that it would take for ESSA to achieve substantial compliance and fulfill the basic objectives of the Consent Order. In entering and agreeing to the terms of the Consent Order, both the Court and the parties acknowledged that the initial five-year term might be adjusted in light of ESSA's performance – the Court specifically shortened its jurisdiction to enforce the terms of the Consent Order to two years and the Order explicitly provided that the terms may be modified by any party upon a motion to the Court. ECF No. 6 at ¶¶53, 62. As set forth in the Declaration attached to ESSA's memorandum in opposition, ESSA has already completed many of the most significant compliance obligations imposed by the Consent Order. *See* Declaration of Gary S. Olson, ECF No. 16 at 10-16. Given ESSA's substantial compliance and its implementation of a durable remedy, shortening the term would not defeat the objective of the Consent Order, as its central purpose has been fully achieved.

**B.    Continued Enforcement Is No Longer Equitable**

Rule 60(b)(5) also permits a court to modify or terminate a previously issued consent order if it finds "that it is no longer equitable that the judgment should have prospective application." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380 (1992); *see also Bldg. & Constr. Trades Council v. NLRB*, 64 F.3d 880, 888 (3d Cir. 1995). In deciding whether to grant relief pursuant to Rule 60(b)(5), courts must apply a "flexible modification standard." *Rufo*, 502 U.S. at 381. "There is. . .no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Id.* at 380.

When applying this standard a court "cannot rely on a simple formula but must evaluate a number of potentially competing considerations" and should "respond to the specific set of circumstances before it by considering factors unique to the conditions of the case." *Bldg. & Constr. Trades Council*, 64 F.3d at 888. Generally speaking, a party seeking modification of a consent order may meet its burden by establishing "at least one of the following four factors: (1) a significant change in factual conditions; (2) a significant change in law; (3) that a decree proves to be unworkable because of unforeseen obstacles; or (4) that enforcement of the decree without modification would be detrimental to the public interest." *Democratic Nat' Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 202 (3d Cir. 2012). In this case, termination is warranted as (1) the speed at which ESSA has achieved substantial compliance constitutes a significant change in factual conditions, and (2) termination is suitably tailored to the change in conditions and is in the public interest.

### 1.    Changed Circumstances Justify Early Termination

Termination is warranted in this case due to a significant change in factual circumstances. While the parties anticipated that ESSA would comply with the terms of the Consent Order, they did not anticipate that ESSA would be able complete the key component of the Consent Order—full distribution of a $2.92 million loan subsidy fund—in less than two years. In this case, the rapid implementation of the central remedial element of the Consent Order is a clear indication that ESSA has been able to achieve a durable remedy and that continued enforcement of the Consent Order is unnecessary. *See Horne*, 557 U.S. at 450.

While *Amici* correctly observe that a modification should not be granted based upon events that were actually anticipated at the time the parties entered into a consent order, the change in circumstances justifying relief from the order need not be unforeseen or unforeseeable. *Rufo,* 502 U.S. at 385. "Litigants are not required to anticipate every exigency that could conceivably arise during the life of a consent decree." *Id.* In this case, the parties agreed to the term of the Consent Order without knowing how long it would take for ESSA to implement a durable remedy. The remarkable speed with which ESSA has achieved substantial compliance in this matter is a change in circumstances that warrants early termination of the Consent Order.

### 2.    Early Termination Is Suitably Tailored to the Change in Circumstances and Is in the Public Interest

The United States submits that termination of the Consent Order is both suitably tailored to the change in circumstances and is in the public interest. Contrary to the assertions of *Amici,* the public's interest in ensuring fair and equal access to credit is not served by imposing unreasonable or unnecessary burdens on financial institutions, but

by ensuring that financial institutions succeed in serving *all* communities within their market areas on equal terms. To ensure that access to credit is not unduly restricted, the benefits of remediation must be weighed against the burdens imposed upon an institution's legitimate business interests.

Given ESSA's substantial compliance and implementation of a durable remedy, it is unlikely that its discriminatory conduct will recur. ESSA has already (1) addressed the policies, staffing and marketing issues that gave rise to this action, (2) dramatically increased the number of loans to borrowers in previously redlined areas, and (3) distributed the loan subsidy fund three years ahead of the deadline set in the Consent Order. These actions suggest that ESSA has succeeded in implementing a durable remedy to the discriminatory conduct alleged in the Complaint. ESSA also remains subject to regular examination by federal and state regulators.[4] As a result, there is no reasonable expectation that ESSA will return to its former redlining practices, and it is unnecessary to subject ESSA to additional reporting and monitoring requirements for three more years.

### C.    *Amici's* Notice of Supplemental Authority Provides No Relevant Basis to Deny Termination

*Amici*'s filing of supplemental authority, citing to a recently issued Supreme Court opinion, *BLOM Bank SAL v. Honickman*, 221 L. Ed. 2d 850 (2025), and an order issued by a U.S. District Court Judge in the Northern District of Illinois in *Bureau of Consumer Fin. Protection v. Townstone Fin., Inc,* No. 20-cv-4176 (N.D. Il. Jun. 12, 2025), has no bearing on the United States's motion.

---

[4]As noted in the Complaint, this enforcement action resulted from a referral by the Federal Deposit Insurance Corporation (FDIC) based on the results of a 2021 consumer compliance examination. *See* ECF No. 1 at ¶¶31-33.

In this case, the United States seeks early termination because of ESSA's substantial compliance with the terms of the Consent Order – a fact which distinguishes this case from those where parties have sought to revisit and vacate judgments that have not yet been satisfied. In their Notice of Supplemental Authority, *Amici* cite to a recently issued opinion by a district court in *Townstone*, denying the parties' joint motion for relief and vacatur of the stipulated final judgment and order. ECF No. 11-1. *Townstone* is distinguishable from this case because there the parties sought to vacate a stipulated final judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, arguing that the plaintiff should not have brought the action in the first instance. *Id*. at 14. In this case, the United States is not seeking to vacate the consent order, but to terminate it early due to ESSA's substantial compliance, with the fundamental purpose of the Consent Order having been achieved. *See Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649, 662 (1st Cir. 1997). As such, the Motion to Terminate does not implicate the same concerns regarding the public interest in the finality of judgments that were cited by the court in *Townstone*. ECF No. 11-1 at 15.[5]

## IV.    CONCLUSION

The Court should grant the unopposed Motion to Terminate and dismiss this action with prejudice. As nonparties to the Consent Order, *Amici* fail to identify a practical benefit or concrete objective that would be served by obliging the parties to remain bound by a Consent Order that they agree is no longer necessary, efficient or equitable. It is not in the interest of justice to force the parties to remain under a consent

---

[5] The other case cited in Movant's Notice of Supplemental Authority, *BLOM Bank SAL v. Honickman*, 221 L. Ed. 2d 850 (2025), is similarly distinguishable as it involved a motion to vacate a final judgment of dismissal.

order when the Court's jurisdiction to enforce the terms of the order has expired, when all parties are agreeable to termination, and where ESSA has demonstrated substantial compliance and implemented a durable remedy. For the foregoing reasons, the United States respectfully submits that the Motion to Terminate should be granted.

Respectfully submitted this 17th day of July, 2025.

DAVID METCALF
United States Attorney
Eastern District of Pennsylvania

HARMEET K. DHILLON
Assistant Attorney General Civil Rights
Division

MICHAEL E. GATES
Deputy Assistant Attorney General

GREGORY B. DAVID
Assistant U.S. Attorney
Chief, Civil Division

CARRIE PAGNUCCO
Chief

VARDA HUSSAIN
Principal Deputy Chief

/s/ Audrey M. Yap
AUDREY M. YAP
Trial Attorney
Housing and Civil
Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW–4CON
Washington, DC 20530
Tel: (202) 514-4713
Fax: (202) 514-1116
audrey.yap@usdoj.gov

GERALD B. SULLIVAN
Assistant U.S. Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 816-8786
Fax: (215) 861-8618
gerald.sullivan@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on July 17, 2025, a true and correct copy of the above response was served on counsel of record in this matter via the Court's CM/ECF system, if registered.

Dated: July 17, 2025

/s/ Audrey M. Yap
AUDREY M. YAP
Trial Attorney
Housing and Civil Enforcement
Section Civil Rights Division
U.S. Department of Justice